## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| Scott Loewenstine, <br> 535 Jacob Close Place <br> Gahanna, Ohio 43230 <br><br> Plaintiff, <br><br> v. <br><br> Open Mortgage, LLC <br> c/o Incorp Services, Inc. <br> 9453 Waterstone Blvd., Ste. 140 <br> Cincinnati, Ohio 45249 <br><br> Defendant. | Civil Action No. 2:17-cv-403 <br><br> Judge <br><br> Magistrate Judge <br><br> **JURY DEMAND ENDORSED HEREON** |

## COMPLAINT

Now comes Scott Loewenstine ("Plaintiff" or "Loewenstine") and proffers this Complaint for damages against Open Mortgage, LLC ("Defendant" or "Open Mortgage") as follows:

**I. JURISDICTION AND VENUE**

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. Chapter 4111 ("the Ohio Wage Act"), the Ohio Prompt Pay Act, O.R.C. § 4113.15 ("OPPA"), and 28 U.S.C. §1331.

2. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises additional claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

3. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendant in the Southern District of Ohio.

## II. PARTIES

### a. Plaintiff

4. Plaintiff, Scott Loewenstine, is an individual, a United States Citizen, and a resident of the State of Ohio.

5. At all times relevant herein, Loewenstine was an "employee" of Defendant as defined in the FLSA, the Ohio Wage Act, OPPA, and Ohio Constitution Art. 2 §34a.

6. At all times relevant herein, Loewenstine was a covered, non-exempt employee of Defendant who, pursuant to Section 7 of the FLSA, was required to receive not less than one and one-half times his regular rate of pay for all hours worked in excess of forty (40) hours.

### b. Defendant

7. Defendant Open Mortgage, LLC is a foreign limited liability company. Defendant Open Mortgage operates a mortgage lending business throughout various states.

8. At all times relevant herein, Defendant was Plaintiff's "employer" as that term is defined by the FLSA, the Ohio Wage Act, OPPA, and Ohio Constitution Art. 2 §34a, doing business in the Southern District of Ohio.

9. At all times relevant herein, Defendant employed Plaintiff in the Southern District of Ohio.

10. At all times relevant to this action, Defendant has been engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendant constituted an enterprise engaged in commerce within the meaning of the FLSA.

11. Upon information and belief, Defendant's employees were engaged in interstate commerce and Defendant has annual gross volume sales and/or business in an amount not less than $500,000.00.

12. During relevant times, Defendant suffered and permitted Plaintiff to work more than forty (40) hours per workweek, while not compensating him for all such hours worked over forty (40) at a rate of at least one and one-half times his regular rate of pay.

13. Upon information and belief, Defendant, at all times relevant hereto, was fully aware of the fact that it is legally required to comply with the wage and overtime payment laws of the United States and of the State of Ohio as well as record keeping laws of the State of Ohio.

14. During relevant times, Defendant had knowledge of and acted willfully in regard to their conduct described herein.

15. Defendant is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

### III. FACTUAL BACKGROUND

16. Plaintiff has worked in the mortgage industry since approximately 1985.

17. Plaintiff worked for another mortgage provider, Stearns Lending, as a mortgage account executive from 2014 until he left his position with that company to accept an offer of employment with Defendant Open Mortgage.

**a. Misrepresentations about Licensure and Employment**

18. In or around November 2016, Plaintiff learned from one of Defendant's employees acting on its behalf, Cathy Castle, that the company was looking for new sales employees.

19. As part of his fact gathering about the opportunity, Plaintiff asked Ms. Castle whether Defendant had a mortgage banker's license to operate in the State of Ohio. Ms. Castle did not have a definitive answer for Plaintiff, but indicated she would determine the answer to his inquiry. Upon information and belief, Ms. Castle then called Kevin McKnight, Defendant's President of Sales, to determine whether Defendant was licensed in Ohio.

20. Ms. Castle called Plaintiff back that same day about the employment openings with Defendant and said Mr. McKnight stated Defendant had its mortgage banker's license to operate in the State of Ohio.

21. Within a few days of these conversations, Mr. McKnight called Plaintiff directly to discuss Defendant's job openings and began actively recruiting Plaintiff to leave his current employment with Stearns Lending to work for Defendant.

22. Plaintiff initially resisted Mr. McKnight's recruiting efforts for Defendant and stated that he was happy with his present employment with Stearns Lending.

23. However, Mr. McKnight continued recruiting Plaintiff to leave his current employment to work for Defendant.

24. During these recruitment discussions, Mr. McKnight made various representations and promises to Plaintiff, including representations that Defendant was one of the top companies in the mortgage industry, and that Plaintiff would eventually lead a sales team for the entire East Coast of the United States if he were to leave his present employment to work for Defendant.

25. Mr. McKnight made numerous other similar statements about the strength of Defendant's company and quality of its mortgage products to induce Plaintiff to leave his current

employment. Early in their discussions, Mr. McKnight even asked Plaintiff what specific day he wanted to start working for Defendant.

26. Even though Ms. Castle previously indicated Mr. McKnight confirmed Defendant had its Ohio mortgage banker's license when Plaintiff first inquired about Defendant's licensing, Plaintiff asked Mr. McKnight directly to confirm that Defendant in fact had its Ohio mortgage banker's license due to the importance of the licensure issue.

27. Whether or not Defendant had its Ohio mortgage banker's license was particularly important as Plaintiff would be responsible for securing new mortgage clients / customers for Defendant if he accepted the offered position.

28. If Defendant did not have its Ohio mortgage banker's license, Defendant knew Plaintiff could not conduct any business on Defendant's behalf in Ohio where Plaintiff resides and built a considerable customer base and professional network over the years.

29. Defendant knew Plaintiff therefore would not accept any position with the company unless and until it first obtained such license.

30. Mr. McKnight confirmed Ms. Castle's previous affirmation and once again stated unequivocally that Defendant had its Ohio mortgage banker's license.

31. These recruitment efforts by Mr. McKnight and Defendant continued for approximately two (2) months.

32. During this time, Defendant called Plaintiff on a weekly basis in a continuing effort to have him leave his successful career with Stearns Lending to begin working for Defendant.

33. Eventually due to the continued efforts by Defendant to recruit Plaintiff to leave his employment and the repeated representations that Defendant had its Ohio mortgage banker's

Complaint – *Loewenstine v. Open Mortgage, LLC*
Case No. 2:17-cv-403
Page 5 of 19

license, Plaintiff accepted a position with Defendant and resigned from his employment with Stearns Lending.

34. On December 22, 2016, Defendant sent Plaintiff a formal employment offer letter. *See* **Exhibit A**. Plaintiff then tendered his resignation with his employer Stearns Lending later that same day.

35. Plaintiff signed and returned the offer letter within approximately a day or two of receiving the employment offer letter.

36. On or around January 2, 2017, Plaintiff started his new position with Defendant.

37. On or around January 3 or 4, 2017, Mr. McKnight called Plaintiff and indicated he had incorrectly stated Defendant had its Ohio mortgage banker's license in the preceding months in recruiting Plaintiff to leave his employment with Stearns Lending.

38. Mr. McKnight acknowledged he misled and misinformed Plaintiff about Defendant's license status in Ohio. He then indicated Defendant would begin the process of obtaining its Ohio mortgage banker's license, but stated he did not know how long that process would take.

39. However, Plaintiff was unable to conduct any business on Defendant's behalf in the State of Ohio until Defendant actually received its Ohio mortgage banker's license.

40. Mr. McKnight therefore instructed Plaintiff that he would have to travel to the states surrounding Ohio where Defendant was licensed, including Indiana, Kentucky, Michigan and Pennsylvania, to seek new business and customers for Defendant in his new role with the company. However, Mr. McKnight told Plaintiff that Defendant would continue to employ him throughout the Ohio licensure process so Plaintiff could eventually operate in his new position in the State of Ohio.

41. Requiring Plaintiff to travel out of state and outside of his professional network to secure new customers and clients for Defendant imposed significantly more challenges upon Plaintiff than he foresaw based on Defendant's prior representations. Notwithstanding Mr. McKnight's repeated representations during Defendant's recruitment efforts that Plaintiff's primary responsibilities were to secure new business and clients in Ohio, Defendant then materially altered the terms of Plaintiff's employment by demanding he secure all new clients outside of Ohio because it was not yet licensed in Ohio as previously stated on numerous occasions.

42. In a subsequent discussion on or around February 21, 2017 about Defendant's Ohio license status and the difficulties Plaintiff experienced having to travel out of state to seek new customers, Mr. McKnight again acknowledged that he misrepresented that Defendant had its Ohio mortgage banker's license when it actually did not and stated that it was 100% his mistake.

43. Mr. McKnight repeated that Defendant would continue to employ Plaintiff throughout Defendant's Ohio mortgage banker's licensure process and at least until Defendant actually obtained its Ohio license so Plaintiff could conduct business in Ohio.

44. Throughout his employment with Defendant, Plaintiff satisfactorily performed his job duties and gave his best efforts to secure new customers and clients outside of the State of Ohio as required due to Defendant's misrepresentations about its licensure status.

45. Nonetheless, on March 2, 2017, Defendant terminated Plaintiff's employment without reason or cause. *See* **Exhibit B.**

46. Defendant's decision to terminate Plaintiff was not due to any fault of Plaintiff and was instead a consequence of Plaintiff's inability to transact business in Ohio due to Defendant's misrepresentations on its licensure status.

**b. Unpaid Overtime Wages**

47. Defendant hired Plaintiff as a non-exempt "Internal Account Executive" and was required to pay him 1.5 times his regular rate for all hours worked in excess of forty (40) per workweek. *See* **Exhibit A**.

48. Because Defendant did not have its Ohio mortgage banker's license as it falsely stated when recruiting Plaintiff, Defendant required Plaintiff to spend a significant amount of time traveling by car to the states surrounding Ohio once he started his employment with Defendant.

49. Defendant required Plaintiff to drive throughout the workweek to states where Defendant had mortgage banker's licenses, including Indiana, Kentucky, Michigan and Pennsylvania, to seek new business and customers for Defendant.

50. In this position, Plaintiff regularly worked more than forty (40) hours per week, but was not paid one and one-half his regular rate for all hours worked over forty (40) as a result of Defendant's policies.

51. Instead, Defendant instructed Plaintiff shortly after he started to alter his timesheets so they would not reflect his actual hours worked. Mr. McKnight instructed Plaintiff to document that he only worked fifty (50) hours each workweek even though he almost always worked more. Mr. McKnight further stated that Defendant would only pay Plaintiff for ten (10) hours of overtime per workweek.

52. Defendant in fact only paid Plaintiff one and one-half his regular rate for the first ten (10) hours of overtime he worked each workweek, even though he almost always worked more.

53. Throughout his employment, Plaintiff regularly worked in excess of fifty (50) hours in a workweek, but Defendant did not pay him time and a half his regular rate for all hours worked over forty (40) as result of Defendant's policies.

54. Sometime after Plaintiff realized he was working much more than fifty (50) hours per workweek, he called Mr. McKnight to discuss Defendant's policy of only paying him for ten (10) hours of overtime per week even though he almost always worked more.

55. During this call, Plaintiff told Mr. McKnight that due to the significant travel required of him because Defendant was not licensed in Ohio, Plaintiff was not being paid for all overtime hours worked when he recorded no more than fifty (50) hours per workweek as instructed by Mr. McKnight.

56. Despite informing Defendant that he was working more than fifty (50) hours per workweek, Mr. McKnight then repeated that Defendant would only pay Plaintiff for ten (10) hours of overtime per workweek regardless of how many hours he actually worked.

57. During relevant times, Defendant suffered and permitted Plaintiff to work more than forty (40) hours per workweek, while not compensating him for all such hours worked over forty (40) at a rate of at least one and one-half times his regular rate.

### IV. CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**FLSA –UNPAID OVERTIME**

58. All of the preceding paragraphs are realleged as if fully rewritten herein. This claim is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*.

59. The FLSA requires that employees receive overtime compensation for hours worked in excess of forty (40) per week. 29 U.S.C. § 207(a)(1).

60. The FLSA requires that covered employees be compensated for every hour worked in a workweek. See 29 U.S.C. § 206(b).

61. The FLSA requires that covered employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. See 29 U.S.C. § 207(a)(1).

62. Plaintiff was a covered employee entitled to the FLSA's protections.

63. Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, he was not an "executive," "administrative," or "professional" employee, as those terms are defined under the FLSA. See 29 C.F.R. §§ 541.0, et seq.

64. Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, he was not a "learned professional" employee, as that term is defined under the FLSA. See 29 CFR § 541.301.

65. Defendant is a covered employer required to comply with the FLSA's mandates.

66. Defendant violated the FLSA with respect to Plaintiff by failing to pay Plaintiff at the rate of one and one half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek.

67. Defendant classified Plaintiff as a non-exempt, hourly employee at all times throughout his employment.

68. Defendant refused and failed to pay Plaintiff the overtime premium required by the FLSA throughout his employment for all hours worked in excess of forty (40) due to its

Complaint – *Loewenstine v. Open Mortgage, LLC*
Case No. 2:17-cv-403
Page 10 of 19

policies and instructions to Plaintiff to record no more than fifty (50) hours per workweek on his timesheets notwithstanding his actual hours worked.

69. Plaintiff routinely worked in excess of fifty (50) hours per week due, in part, to the significant time spent traveling out of state by car for Defendant's benefit.

70. Plaintiff should have been paid the overtime premium for all hours worked in excess of forty (40) hours per week, including those hours worked in excess of fifty (50) per week, but was not as a result of Defendant's policies.

71. Defendant knew or should have known of the overtime payment requirement of the FLSA.

72. Defendant's payment to Plaintiff of an hourly amount greater than his normal rate of pay for the first ten (10) hours worked over forty (40) per week demonstrates Defendant knew or should have known it was required to pay Plaintiff overtime compensation for all hours worked over forty (40) per workweek.

73. Throughout his employment for Defendant, Defendant has knowingly and willfully failed to pay Plaintiff the overtime wages he was due.

74. The job duties Plaintiff had in the years preceding the filing date of this Complaint did not exempt him from the overtime pay requirements, or any other requirement of the FLSA.

75. The exact total amount of compensation, including overtime compensation, that Defendant has failed to pay Plaintiff is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

76. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable. In addition, Plaintiff seeks liquidated damages, interest and attorneys' fees, and all other remedies available, as result of Defendant's willful failure and refusal to pay overtime wages in violations of Sections 6 and 7 of the Act (29 U.S.C. §§206-207).

## SECOND CAUSE OF ACTION
## R.C. 4111.03 – UNPAID OVERTIME

77. All of the preceding paragraphs are realleged as if fully rewritten herein

78. This claim is brought under Ohio Law.

79. The Ohio Wage Act requires that covered employees be compensated for every hour worked in a workweek. See O.R.C. §§ 4111 et seq., See also, 29 U.S.C §206(b)

80. The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938. See O.R. C. § 4111.03 (A), See also, 29 U.S.C. § 207 (a)(1)

81. Plaintiff was a covered employee entitled to the Ohio Wage Act's protections

82. Plaintiff was not exempt from receiving Ohio Wage Act overtime benefits because he was not an exempt "executive," "administrative," or "professional" employee, as those terms are defined under the FLSA. See O.R.C. 4111.03(A), See also 29 C.F.R. §§ 541.0, et seq.

83. Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, he was not a "learned professional" employee, as that term is defined under the FLSA. See 29 CFR §541.301

84. Defendant is covered employers required to comply with the Ohio Wage Act's mandates.

85. Defendant violated the Ohio Wage Act with respect to Plaintiff by failing to compensate him at the rate of one and one-half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek.

86. In violating the Ohio Wage Act, Defendant acted willfully and with reckless disregard of clearly applicable Ohio Wage Act provisions.

87. For Defendant's violations of the Ohio Wage Act, Plaintiff has suffered damages, Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available.

## THIRD CAUSE OF ACTION
## R.C. 4113.15 —OPPA VIOLATION

88. All of the preceding paragraphs are realleged as if fully rewritten herein.

89. During relevant times, Defendant was covered by the OPPA and Plaintiff has been employed by Defendant within the meaning of the OPPA.

90. The OPPA requires Defendant to pay Plaintiff all wages, including unpaid overtime, on or before the first day of each month, for wages earned by him during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by him during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

91. During relevant times, Plaintiff was not paid all wages, including overtime wages at one and one-half times his regular rate within thirty (30) days of performing the work. *See* O.R.C. § 4113.15(B).

92. Plaintiff's unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

93. In violating the OPPA, Defendant acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law, and its actions entitle Plaintiff to liquidated damages in the amount of six percent of the amount of the unpaid overtime compensation owed or two hundred dollars, whichever is greater.

**FOURTH CAUSE OF ACTION**
**RECORDKEEPING VIOLATIONS OF THE OHIO WAGE ACT**

94. All of the preceding paragraphs are realleged as if fully rewritten herein.

95. The Ohio Wage Act requires employers to maintain and preserve payroll or other records containing, among other things, the hours worked each workday and the total hours worked each workweek. *See* O.R.C. § 4111.08. *See also*, 29 C.F.R. §§ 516.2 *et seq*.

96. During all times material to this complaint, Defendant was a covered employer, and was required to comply with the Ohio Wage Act's mandates.

97. Plaintiff was a covered employee entitled to the protection of the Ohio Wage Act.

98. During times material to this complaint, Defendant violated the Ohio Wage Act with respect to Plaintiff by failing to properly maintain accurate records of all hours Plaintiff worked each workday and within each workweek.

99. In violating the Ohio Wage Act, Defendant acted willfully and with reckless disregard of clearly applicable Ohio Wage Act provisions.

**FIFTH CAUSE OF ACTION**
**PROMISSORY ESTOPPEL**

100. All of the preceding paragraphs are realleged as if fully rewritten herein.

101. Defendant, by and through its authorized representatives and those acting on its behalf, made numerous clear, unambiguous promises, representations and statements to Plaintiff regarding employment opportunities with the company as provided in the preceding paragraphs, including but not limited to unequivocal statements on numerous occasions that Defendant already had its Ohio mortgage banker's license at the time it was recruiting Plaintiff to leave his current employer when it did not.

102. Defendant made additional unambiguous promises and representations guaranteeing Plaintiff's employment throughout its Ohio licensure process after acknowledging it misled Plaintiff on the licensure issue in recruiting him to join the company.

103. Plaintiff relied upon the promises and representations made by Defendant and its authorized representatives as provided in the preceding paragraphs.

104. Plaintiff's reliance upon these promises and representations was reasonable and foreseeable.

105. Plaintiff was injured and suffered damages as a result of his reasonable and foreseeable reliance upon the promises made to him by Defendant and its authorized representatives.

## SIXTH CAUSE OF ACTION
## BREACH OF EXPRESS CONTRACT

106. All of the preceding paragraphs are realleged as if fully rewritten herein.

107. The parties entered into a binding agreement regarding Plaintiff's employment with Defendant.

108. Prior to Plaintiff's acceptance of the offer of employment with Defendant, Defendant and its authorized representatives expressly stated on numerous occasions that Defendant had its mortgage banker's license to operate in the State of Ohio.

109. Defendant knew that if it did not have its Ohio mortgage banker's license, Plaintiff could not conduct any business on Defendant's behalf in Ohio where he lives and where he built a considerable customer base and professional network over the years.

110. Defendant's express statements to Plaintiff that it already had its Ohio mortgage banker's license were a material term of the parties' binding agreement for Plaintiff's employment.

111. Defendant knew Plaintiff would not have accepted employment with Defendant or left his prior employment but for Defendant's statements or unless and until Defendant first obtained an Ohio mortgage banker's license.

112. When Defendant disclosed it misled Plaintiff about its Ohio licensure status after Plaintiff had already left his prior employment and began working for the company, Defendant then additionally agreed it would continue to employ Plaintiff throughout the Ohio licensure process so Plaintiff could eventually operate for Defendant in the State of Ohio.

113. Plaintiff complied with all of his contractual obligations pursuant to the parties' agreement.

114. Defendant, however, failed to fulfill its contractual obligations under the agreement and materially breached the same. Defendant's failures include, but are not limited to: (i) breaching its agreement with Plaintiff by falsely stating on numerous occasions that it had its mortgage banker's license to operate in the State of Ohio when it did not, and (ii) by terminating

Plaintiff's employment without justification before obtaining its Ohio license when it previously expressly agreed to employ Plaintiff throughout the licensure process.

115. As a direct and proximate result of Defendant's conduct and breaches of the Agreement, Plaintiff has suffered damages.

**SEVENTH CAUSE OF ACTION**
**BREACH OF IMPLIED IN FACT CONTRACT**

116. All of the preceding paragraphs are realleged as if fully rewritten herein.

117. The parties entered into a binding, implied in fact agreement regarding Plaintiff's employment with Defendant.

118. The circumstances surrounding Defendant's recruitment of Plaintiff from his prior employment, the statements and representations made to Plaintiff when he inquired about whether Defendant had an Ohio mortgage banker's license, and the offer of employment made thereafter, establish that a contract existed between the parties as a matter of tacit understanding.

119. Once Defendant revealed to Plaintiff that it falsely stated on numerous occasions it was already licensed in Ohio, Defendant's representations that it would continue to employ Plaintiff throughout its Ohio licensure process further established a contract existed between the parties as a matter of tacit understanding.

120. All of the circumstances surrounding the parties' interactions and dealings make it reasonably certain that the parties intended an agreement.

121. Plaintiff complied with all of his contractual obligations pursuant to the parties' agreement.

122. Defendant, however, failed to fulfill its contractual obligations under the agreement and materially breached the same.

123. As a direct and proximate result of Defendant's conduct and breaches of the Agreement, Plaintiff has suffered damages.

## V. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests judgment against the Defendants for an Order:

A. Finding that Defendant failed to keep accurate records in accordance with the FLSA and Ohio law, Plaintiff is entitled to prove his hours worked with reasonable estimates;

B. Awarding Plaintiff unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the FLSA;

C. Awarding Plaintiff unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by Ohio Law;

D. Awarding Plaintiff costs and disbursements and reasonable allowances for fees of counsel and experts, and reimbursement of expenses;

E. Awarding Plaintiff all monetary damages, interest, and compensatory damages in an amount to be determined at trial, and any and all other relief, which the Court deems just and appropriate.

F. Issuing an injunction prohibiting Defendant from engaging in present, ongoing and future violations of the FLSA and Ohio Law;

G. Granting Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery;

H. Rendering a judgment against Defendant for all damage, relief, or any other recovery whatsoever.

Respectfully submitted,

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
**COFFMAN LEGAL, LLC**
1457 S. High St.
Columbus, Ohio 43207
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

Peter Contreras (0087530)
**CONTRERAS LAW, LLC**
PO Box 215
Amlin, Ohio 43002
Phone: 614-787-4878
Fax: 614-923-7369
Email: peter.contreras@contrerasfirm.com
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)